## Case No. 11,194.

### PITTS v. WEMPLE.

[1 Biss. 87; 5 Fish. Pat. Cas. 10.] [1]

Circuit Court, N. D. Illinois. Dec., 1855.

PATENTS—CONSTRUCTION—NONUSER OF PATENTED INVENTION—PRIOR MACHINE—UTILITY.

1. The claims of a patent are to be construed with reference to the state of the art at the time of the invention.

[Cited in Johnson v. McCabe, 37 Ind. 538.]

2. The whole patent, including the specifications and drawings, is to be taken into consideration, but we look only at them for the purpose of placing a proper construction on the claim.

3. The invention set forth in the first claim of Pitts' patent consists in the peculiar construction of the apron and of its use in the machine, and operating substantially as described. It does not consist of an endless apron merely, or of an endless apron divided into troughs or cells merely, but of the apron as it is described operating in the machine substantially as described, that is, such an apron in such a machine.

4. It is not necessary that a prior machine should have been actually used for the purpose contemplated, but it must have been capable of such use, and a mechanic of competent skill should be able in the then state of the art to construct the machine. so as to produce the result; from an inspection of the specification and drawings.

[Cited in Stitt v. Eastern R. Co., 22 Fed. 651.]

5. A man may obtain a patent for an invention and let it lie in the patent office without use, and no one else would have the right to use such invention because it is his property.

6. Still in ascertaining whether the machine is capable of use, it may be important to know that the inventor had never made or used the machine. because the presumption is, that a person obtains a patent for something practical, and not for a mere experiment.

7. The question is not whether the apron of the defendant's machine operates as perfectly as the apron of the plaintiff's machine, but whether it is the same in principle or not.

8. By the principle of a machine or improvement. is to be understood. the peculiar mode, manner or device by which the proposed result or effect is produced.

9. The superior utility of the defendant's elevator, is not of itself a certain test upon the question of identity. because the defendant's machine might contain the whole substance of the plaintiff's and something in addition. and the addition would not prevent it from being an infringement.

[Cited in Pacific Cable Ry. Co. v. Butte City St. Ry. Co., 55 Fed. 763.]

This was an action on the case tried by Judge DRUMMOND and a jury, for the infringement of a patent issued to Hiram A. and John A. Pitts, December 29, 1837 [No. 542], and assigned to plaintiff for "a new and useful improvement in machines for threshing and cleaning grain." The specification of Pitts set forth that the inventors "had invented a new and improved combination of machinery for separating grain from the straw and chaff as it proceeds from the threshing machine." The chief feature in their invention consisted in an endless belt or apron, proceeding from the threshing machine to the fan-mill, which was of a peculiar construction. The apron was provided with a series of narrow wooden compartments, of a sufficient height above the apron to permit the grain, which was separated from the straw and chaff by the agitation of the machine when in operation, to fall through into the cells. By this means the straw and chaff were carried along on the tops of the boxes, and kept from being commingled with the grain below, until, by the action of the machine, the compartments were carried forward and emptied the separated grain into the fan-mill, and the straw and chaff passed off over the end of the apron. Previous to the invention of the plaintiff, an endless apron with cells or buckets, had been used as a carrier. or elevator, to carry flour and other materials from one point to another. The defendant put in evidence a patent issued to Samuel Lane, April 6, 1831. The Lane patent contained an endless apron proceeding from the threshing machine to an endless sieve. The Lane apron had no compartments or cells, but was a smooth apron, and was used in his machine to carry forward the threshed grain as it came from the thresher, mixed with the straw and chaff to an endless sieve, by the agitation of which sieve the grain was separated from the straw and chaff, which latter were cast off over the end of the sieve. while the sifted grain was conducted from the sieve to the fan-mill. In the defendant's machine there was also an endless apron, which carried the threshed grain to a peculiarly constructed sieve, secured to Wemple by letters patent, granted July 13, 1844, and the sifted grain was conducted from the sieve to the fan-mill. It further appeared that the defendant had sometimes used slats about half an inch in thickness, nailed to the apron, and placed about a foot apart, to give it stiffness and prevent it from sagging at the sides. In addition to these features of the machine, there was what was termed a side elevator in the Pitts machine. which constituted the fourth claim of the patent. This consisted of a larger sieve extending beyond the upper sieve, into which the light grain or tailings which pass over the sieve was received, and from which lower sieve it was conducted through a shoe underneath and a spout to an elevator by which it was taken up and emptied into the upper sieve of the machine, for further sifting. In the Wemple machine there was also a lower projecting sieve and shoe and spout, through which the grain received by them was poured into a side elevator, and was carried forward and emptied into the thresher of the machine. The claims of the plaintiff's patent are set forth in the charge of the court.

Chickering & James. for plaintiff.

E. C. Larned and Grant Goodrich, for defendant.

---

[1] [Reported by Josiah H. Bissell. Esq.. and by Samuel S. Fisher. Esq.. and here compiled and reprinted by permission.]

DRUMMOND, District Judge (charging jury). This is an action brought by the plaintiff to recover damages from the defendant for the infringement of letters patent granted by the United States to John A. Pitts and the plaintiff, and of which the latter is assignee for Illinois.

In the present trial, the discussion has been brought within a very narrow compass: that is, first, the extent and nature of the claims contained in a patent of the plaintiff; and, second, the infringement of those claims by the defendant, both of which are resolved into the last point, that is, whether the defendant has been guilty of a violation of the plaintiff's patent.

The validity of the plaintiff's patent has not been questioned at the present trial. It is admitted that as properly limited and interpreted, it is valid. Testimony has been introduced to prove the state of the art at the time, and this is always necessary, because the claims in the patent are to be construed with reference to the state of the art at the time of the invention. It is with this view that the Lane patent has been introduced, and has been allowed to go before you.

The court is of opinion now, as it always has been, that the Lane patent, even if it covered a practical improvement in the machine for threshing and cleaning grain, may be permitted to stand, without impairing the just claims of the plaintiff, for reasons that will be briefly stated hereafter.

The patent law requires the inventor to set forth the nature and extent of his discovery, so that, by referring to his letters patent, a mechanic of competent skill may be able, in the state of the art as then understood, to construct the machine or improvement, if the invention relate to a machine. And he must particularly specify and point out the part, improvement, or combination which he claims as his own invention or discovery. He is restricted to this claim. It is true that the whole patent, including specifications and drawings, is to be taken into consideration, but we look at them only for the purpose of placing a proper construction upon the claim.

Guided by these principles, let us look into the plaintiff's patent.

The patentees set out with declaring that they have invented a new and improved combination for separating grain from the straw and chaff as it proceeds from the threshing machine. This they declare to be their invention. They then minutely and particularly describe this new and improved combination of machinery for accomplishing that result. After this description, they comply with the demands of the law, by setting forth their claims, which have been classified as follows:

They claim: First. The construction and use of an endless apron, divided into troughs or cells in a machine for cleaning grain, operating substantially in the way described. Second. The revolving rake, for shaking out the straw, and the roller for throwing it off the machine, in combination with such a revolving apron as set forth. Third. The guard slats in combination with a belt (apron) constructed substantially as above described. Fourth. The combination of an additional sieve and shoe with the elevator for carrying up the light grain, in the manner and for the purpose set forth.

If we take these four claims and apply them to the description of each, as contained in the specifications, drawings, &c., we shall clearly understand the nature and effect of each distinct claim.

The only thing that is claimed as new, is the construction and use of the apron, and that is claimed in the machine as described.

All the other claims consist of combinations of parts with each other.

As to the first claim, I agree with all the courts that have had this patent before them. It consists in the peculiar construction of the apron, and its use in the machine, and operating substantially as described.

It does not consist of an endless apron merely, nor of an endless apron divided into troughs or cells merely, but of the apron as it is described, operating in the machine substantially as described, that is, such an apron in such a machine.

And here may be shortly stated the reason why the patent of the plaintiff may be sustained, notwithstanding the Lane patent may be considered valid; and it is because of the construction which is given to this first claim of the plaintiff. Lane only used an endless apron for the purpose of carrying the grain and straw to a sieve or rake, which connected with a fan-wheel. Lane's apron was a smooth apron, used only for the purpose of carrying forward the grain and straw. It was not constructed for, nor did it operate as a separator of the grain from the straw as it proceeds from the threshing machine. If the plaintiff's apron was constructed for that purpose only, and operated only to produce such a result,—on the supposition that the Lane patent is valid,—his patent would be void. But it is because the apron, with its appliances and combinations, the moment the grain and straw and chaff proceed from the threshing machine, produces the process of separation, and thus has a different office or function from that of Lane's apron, that the plaintiff's first, second, and third claims can be considered valid.

If the apron of the plaintiff's machine is not constructed for that purpose, and does not produce that result,—that of separation,—then these first three claims can not be sustained consistently with the validity of Lane's patent.

But it is said that Lane's patent can have no influence in this case, because his machine was not a practicable machine.

This may be true, and still it can not be dis-

puted but that Lane invented the combination of an endless apron with a threshing machine, and a winnower for the purpose of carrying the straw and grain from the one to the other, and any one would have the right to use such an apron as that of Lane's for a similar purpose, and by other machinery or improvements (not including that of the plaintiff's) he might have a practical machine, and by so doing, he would not infringe as to the plaintiff's apron. This is so, because the machine of Lane might not have been practicable, from some other defect in the machine which had nothing to do with the office of the apron as a conveyer or carrier.

Whether Lane's machine was a practicable machine, is a question of fact for the jury. It is not necessary that it should have been actually used for the purpose contemplated, but it must have been capable of such use, and a mechanic of competent skill should be able, in the then state of the art, to construct the machine so as to produce the result from a mere inspection and examination of the specifications, drawings, &c.; that is, from the letters patent.

A man may obtain a patent for an invention, and let it lie in the patent office without use, and no one else would have the right to use such invention because it is his property; but, while this is true, as a matter of law, still in ascertaining whether the machine is capable of use, it may be important to know that the inventor had never made or used the machine, because the presumption is, that a person obtains a patent for something practical, and not for a mere experiment.

It need not be a very useful or profitable machine, but it must be capable of some use not mischievous, injurious, or immoral.

If the defendant has used any one of the four claims contained in the plaintiff's patent, then he is guilty of an infringement, and whether he has or not is a question of fact for the jury to determine; but in order to constitute an infringement there must have been the use of the whole of one or more of the claims— that is, the whole combination of one of the claims. This part of the controversy has been brought within somewhat narrow limits under the law, which it is the duty of the court to declare to you.

As to the first three claims of the plaintiff, there can be no infringement of either of these claims, unless the defendant has used the apron of the plaintiff's machine. The reason of that rule is this: his first claim is for the apron as used and operated and constructed. Of course to infringe that claim the plaintiff's apron must be used by the defendant.

The second claim is not for the revolving rake alone, nor for the roller alone, but for them in combination with such a revolving apron as set forth. The revolving apron as described is of the essence of this claim, and there can be no infringement of this claim unless the defendant has used the plaintiff's revolving apron.

The third claim is not for the guard slats alone, but for the guard slats in combination with the apron constructed substantially as described. The apron is an essential part of this claim, and there can be no infringement unless the apron of the plaintiff has been used by the defendant.

The defendant's counsel have chosen to rest the defense, as to this part of the case, upon the point, as they allege, that the defendant has not used the apron as described in the plaintiff's patent.

If he has used the plaintiff's apron as described and claimed, it is conceded the defendant has infringed. Whether the defendant has used the apron of the plaintiff's machine, as described, is a question of fact for the jury to determine. The thing for you to decide is whether the endless apron, as used by the defendant in his machine, is constructed substantially like that of the plaintiff's machine, and operates substantially in the same way to produce the same result. It is not whether the apron of the defendant's machine operates as perfectly as the apron of the plaintiff's machine, but whether it is the same in principle or not. And by the principle of a machine, or improvement of a machine, as used by us here, is to be understood the peculiar mode, manner, or device by which the proposed result or effect is produced.

With this rule in view, as a guide to them, the jury will consider the evidence, and form their conclusions as to whether the apron of the defendant's machine acts upon the same principle as that of the apron of the plaintiff's machine. If it does, then the defendant is guilty as to this part of the case, otherwise not. The point is, whether the defendant has in the use of his apron, availed himself of the plaintiff's invention, as contained in his patent. If he has, no change of form merely will prevent it from being an infringement; but if there is a change in substance and principle, then there is no infringement.

Much has been said on both sides as to the slats which are found in the defendant's apron. It is for you to determine whether, by being placed there, it causes the apron of the defendant's machine to operate in substantially the same way, and to produce substantially the same result as that of the plaintiff.

The main point as to this is, whether it is a mere colorable alteration of the plaintiff's apron in this respect.

The fact that some separation takes place in the defendant's apron, of the grain from the straw, as it moves with the apron, will not constitute of itself an infringement of the plaintiff's patent in this particular.

Such separation may be a mere incident of the motion of the machine. It is probable, judging from the testimony, that an incidental separation takes place on Lane's apron as it carries the grain and straw from the threshing machine to the sieve, as described in his patent, and yet as already stated, ad-

mitting Lane's patent to be valid, the claim of the plaintiff's patent for the apron is not invalidated.

The main point, I repeat, is, do the aprons of the plaintiff's and defendant's machines operate substantially and in principle alike?

The foregoing remarks have been chiefly confined to the first three claims in the plaintiff's patent, because they all depend upon the use of the plaintiff's apron by the defendant.

We will now proceed to the last claim in the plaintiff's patent.

As already intimated, the defendant may not have violated any one of the first three claims, and yet he will be guilty of an infringement, if he has used the combination as described in the fourth claim.

It remains, therefore, for you to consider whether the defendant has used this combination of the plaintiff.

And upon this part of the case, the counsel for the defendant have rested the defense upon the point, as they allege, that the defendant has not used the side elevator of the plaintiff's machine as described in his patent. The facts on this point are not disputed; and it is for you to determine whether the change that is made in the elevator used by the defendant changes the principle upon which it operates. The plaintiff states, in the patent, the manner in which his elevator operates. He places one sieve beyond another into which the light grain, that may have passed over, may be received, passing through into a shoe underneath and out at a spout on an elevator which carries the light grain into the sieves again for a more effectual cleaning.

It will thus be seen that the elevator of the plaintiff's machine takes the "tailings," as they have been called by most of the witnesses, and raises them upon a band of elevators, to be thrown upon a sieve to be re-cleaned.

This is the description and result of his combination. And you will understand that the same rule applies here as in the other claim, that is, the whole combination of this claim must be violated, and that the elevator is a material part of this claim, and we only consider the question of the elevator because the defendant's counsel rest their defense, in this respect, on the elevator. And it is true, in point of law, if the defendant does not use the elevator of the plaintiff's machine, as described in his patent, he does not infringe this claim.

The elevator, which has been used by the defendant, takes the tailings and raises them upon a band of elevators, to be thrown upon the thresher for a more effectual threshing as well as cleaning, and the question of fact, to be determined by you, is whether the defendant's method is substantially the same as that of the plaintiff's.

The superior utility of the defendant's elevator is not, of itself, a certain test upon this question, because the defendant's might contain the whole substance of the plaintiff's and something in addition, and the addition would not prevent it from being an infringement.

For example, if the defendant's elevator took the tailings and carried them on the sieve, and after that did something in addition which rendered it more useful than that of the plaintiff, that circumstance would not prevent it from being an infringement of the plaintiff's claim.

A truer test, it seems to me, is whether the elevator of the defendant, and its mode of operation, would constitute it, with reference to the elevator of the plaintiff, a substantial invention, sufficient to support a patent as for a new thing.

After a patent has been obtained for a particular thing by one person, another person, without appropriating that patent, may, invent a new mode of accomplishing the same or a similar object, and the latter will be entitled to a patent for his discovery. He must, however, invent something material and new—that is essential to the subject matter of the invention. If what he has done is only to vary the invention of another in certain particulars, without affecting the principle, then the subject matter remains the same. But if he has introduced a new element or principle into the subject matter of the invention, then there is no infringement.

You will apply these rules to the question involved in this part of the case. You will recollect the testimony as to the tailings. It was stated by all the witnesses that there would be unthreshed heads of wheat or grain under certain circumstances. And it was said to be the practice, when the short elevator was used, to gather them in a basket and throw them into the thresher.

The point is, whether this adds a new principle to the elevator, not contained in the combination of the plaintiff, notwithstanding the tailings, as thus thrown into the thresher, may eventually reach the sieve where they are thrown by the combination of the plaintiff.

The question is, whether this is or not a mere incident to the operation of the defendant's elevator, or whether or not the latter is substantially the same thing, under a mere change of form.

If it is in fact substantially different, and acts upon a different principle, then the plaintiff's patent, would not prevent another patent for the long elevator from being valid, but both might stand, otherwise not.

It will thus be seen by the jury that, as the case is presented to them, there are two main questions of fact to be found by them. First. Did the defendant in his machine, use the apron of the plaintiff as described in his patent? Second. Did the defendant in his machine, use the side elevator of the plaintiff's machine as described in his patent?

If the jury should find both or either of

these questions in the affirmative, then the defendant is guilty, and they will so render their verdict.

If the jury should find both of these questions in the negative, then the defendant is not guilty and they will so render their verdict.

If the jury should find in the affirmative on one or both of these questions, they will please to state whether they find on one or both.

The jury found for the defendant.

The opinion of McLean J., on previous trial of this case is reported [Case No. 11,195].

[Patent No. 542 was granted to H. & J. Pitts December 29, 1837. For other cases involving this patent, see Pitts v. Whitman, Case No. 11,196, and Pitts v. Hull, Id. 11,193.]